IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

CHRISTOPHER SMITH, PLAINTIFF

VS. NO. 1:05CV266-D-D

CITY OF TUPELO, MISSISSIPPI,
LEE COUNTY, MISSISSIPPI,
LEE COUNTY SHERIFF'S DEPARTMENT
JUSTICE COURT OF LEE COUNTY, MISSISSIPPI, DEFENDANTS

OPINION GRANTING MOTIONS FOR SUMMARY JUDGMENT

Presently before the Court are the Defendants' motions for summary judgment. Upon due consideration the Court finds that the motions shall be granted.

*A. Factual Background*

On January 2, 2005, Christopher Smith was arrested by the Tupelo Police Department and charged with possession of methamphetamine. Smith was taken to the Lee County Jail and placed in a holding cell along with "twelve to thirty" other detainees. Smith complains the condition of the holding cell was so atrocious that his right against cruel and unusual punishment was violated.

Three days later, on January 5, 2005, Smith made an initial appearance in the Justice Court of Lee County where his bail was set at $5000. Smith did not post bail because, he contends, he was never informed of his options. Upon his return to the Lee County Jail, Smith was placed in "C-pod." Smith contends that there were too few cots in C-pod to accommodate each inmate. So, on January 6, 2005, when he attempted to lie on one of the cots, another inmate claimed it as his own and punched Smith in the face knocking him to the floor. Smith was immediately seen by a nurse at the jail. He was then transported to the emergency room at North Mississippi Medical Center where it was determined that Smith had sustained a broken jaw which would require surgery to repair.

Since the attending physician had other commitments, the surgery was scheduled for 10:00 a.m. the following morning. While at the hospital Smith received several medications to control his pain. Smith was also given a prescription for pain medication upon his departure. Smith was discharged from the emergency room at approximately 5:50 p.m. on January 6th.

Smith was returned to the jail, where he avers, that he was forced to sleep on the floor due to the limited number of cots and denied his medication. The following morning, on January 7th, Smith was released from jail on his own recognizance prior to 10:00 a.m.[1] Rather than going strait to the hospital for his scheduled surgery, Smith conducted personal errands. He did eventually have the corrective surgery on January 13th.

There is little disagreement over the reasons for Smith's release. The Defendants state that Smith was released due to the unavailability of City patrol officers to accompany Smith during his surgery and to avoid the costs associated with the same. Plaintiff portrays his release from incarceration as an egregious and arbitrary violation of his right to adequate medical treatment. More specifically, Plaintiff's complaint includes claims arising out of the conditions of confinement, failure to protect, denial of adequate medical treatment, and denial of procedural due process. Defendants argue that they have no duty to house an offender until medical treatment is complete and, as such, there has been no constitutional violation. Furthermore, Plaintiff received any and all procedural process due him.

---

[1] The release report notes that the official release date and time was January 7, 2005, at 8:34 in the morning.

*B. Standard of Review*

When considering a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265, 275 (1986) ("the burden on the moving party may be discharged by 'showing'...that there is an absence of evidence to support the non-moving party's case"). Under Rule 56(e) of the Federal Rules of Civil Procedure, the burden shifts to the non-movant to "go beyond the pleadings and by...affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 324, 106 S. Ct. at 2553, 91 L. Ed. 2d at 274. That burden is not discharged by "mere allegations or denials." Fed. R. Civ. P. 56(e). All legitimate factual inferences must be made in favor of the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202, 216 (1986). Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. Before finding that no genuine issue for trial exists, the court must first be satisfied that no reasonable trier of fact could find for the non-movant. Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538, 552 (1986).

*C. Discussion*

1. Burden of Proof for Conditions of Confinement Generally

As an initial matter, the parties do not agree on the standard under which the state's duty to a pretrial detainee is analyzed. The Fifth Circuit has made clear, however, that the constitutional

rights of a pretrial detainee flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment. Thus, "(1) the State owes the same duty under the Due Process Clause and the Eight Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk." *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996).

In interpreting the applicable mental standard for "deliberate indifference" in conditions of confinement cases, *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995), the Supreme Court has held the standard is not met "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference is the equivalent of wanton behavior rather than inadvertence or error in good faith. *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). The failure to alleviate a significant risk that the official should have perceived but did not is insufficient to show deliberate indifference. *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (citations omitted). The establishment of mere negligence is not a sufficient basis for recovery. *Neals*, 59 F.3d at 533.

      *a. Conditions of the Jail*

Plaintiff's claim is primarily related to the conditions of the holding cell, before he was transferred to C-pod, for which he seeks equitable relief. Plaintiff alleges that the overcrowded holding cell did not have a shower and because the lavatory from which water could be obtained was

4

full of vomit he was unable to clean himself for days. Further, he contends that there was no toilet paper, and human feces and urine were on the floor. He finally avers that he was never provided a mat, cot or mattress to sleep on even after his jaw was broken. The Defendants assert that Plaintiff, who is no longer housed at the Lee County Jail, has no standing to seek equitable relief.

In the context of an incarcerated individual who seeks declaratory and injunctive relief based on the conditions of confinement, the Fifth Circuit has routinely held that removal from the complained of conditions renders the inmate's claim moot. *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001); *see also Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002); *Gordon v. Police Jury of Jefferson Davis Parish*, 275 F.3d 1080 (5th Cir. 2001); *Edwards v. Johnson*, 209 F.3d 772, 776 (5th Cir. 2000); *Tiner v. Jones*, 62 F.3d 392 (5th Cir. 1995); *Pembroke v. Wood County, Tex.*, 981 F.2d 225, 228-29 (5th Cir. 1993); *Cooper v. Sheriff, Lubbock County, Tex.*, 929 F.2d 1078, 1084 (5th Cir. 1991); *Beck v. Lynaugh*, 842 F.2d 759, 762 (5th Cir. 1988). Additionally, it is frequently recognized that relief based on possible future return to the same facility and conditions is "too speculative" to warrant redress.[2] *Herman*, 238 F.3d at 665; *Tiner, 62 F.3d at 392; Bailey v. Southerland*, 821 F.2d 277, 279 (5th Cir. 1987).

Since Plaintiff has been released from and is no longer housed at the Lee County Jail, his claim challenging the conditions of the same for which he seeks injunctive and declaratory relief is moot. Furthermore, to the extent that Plaintiff may be seeking monetary damages, the Prison

---

[2] A plaintiff can avoid the "speculative" injury preclusion by showing either a "demonstrated probability" or a "reasonable expectation" that he will return to the same objectionable facility or conditions. *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002); *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 n.3 (5th Cir. 1996). This places Smith in an interesting position arguing that he is likely to return to the Lee County Jail given his criminal record and history of drug abuse. Though the court might be inclined to agree that Smith possesses an inclination for recidivism, the possibility alone does not rise beyond mere speculation.

Litigation Reform Act has made it very clear that a physical injury is required before compensatory damages are appropriate. *See* 42 U.S.C. § 1997e(e) and (h). Although disturbing, Plaintiff's allegations of deplorable unsanitary conditions and overcrowding at the jail do not provide him a basis for relief. The Constitution does not require that a prisoner or, in this case, a pretrial detainee be housed in a comfortable facility. *Herman*, 238 F.3d at 664. Accordingly, summary judgment shall be granted in favor of all Defendants.

        b. *Failure to Protect*

"The Eighth Amendment affords prisoners protection against injury at the hands of other inmates"[3] *Johnson v. Lucas* , 786 F.2d 1254, 1259 (5th Cir. 1986) (citations omitted). The Fifth Circuit has stated that "the 'deliberate indifference' standard [is] the proper standard to apply in the context of convicted prisoners who claim[] the failure to protect." *Grabowski v. Jackson County Public Defenders Office*, 47 F.3d 1386, 1396 (5th Cir. 1995). Succinctly, a prison official acts with the requisite deliberate indifference to establish a constitutional violation, based on failure to protect an inmate from violence at the hands of other inmates, if the official is aware of an excessive risk to inmate safety and disregards that risk. *Longoria v. Texas*, 473 F.3d 586, 592-93 (5th Cir. 2006). "Prison officials are not, however, expected to prevent all inmate-on-inmate violence," but are charged with protecting incarcerated individuals from a known excessive risk to safety. *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003). The official's requisite knowledge can be proven through the use of circumstantial evidence, such as by showing that the risk was so obvious that the official

---

[3] As initially noted, the deliberate indifference standard applies to both convicted inmates and pretrial detainees. *Hare*, 74 F.3d at 643. The court is well aware that Smith was a pretrial detainee and not a convicted inmate during the relevant time period. For purposes of stating the elements and burden of proof, inmate and detainee may be used interchangeably.

must have known about it. *Johnson v. Johnson*, 385 F.3d 503, 524 (5th Cir. 2004). A prison official's negligence for failing to protect the plaintiff is not actionable. *Thompson v. Upshur County, TX*, 245 F.3d 447, 459 (5th Cir. 2001).

In a rather protracted manner of pleading, Plaintiff argues that the unsanitary conditions of the holding cell combined with an undercurrent of racial discord between the black inmates and the smaller group of white inmates was the proximate cause of the assault and his broken jaw. Plaintiff suggests that Defendants[4] were aware of the racial tensions and the deplorable conditions but failed to take preventative action. If the court was reviewing a motion to dismiss rather than a motion for summary judgment, Plaintiff's claim would likely be sufficient. At this stage of the litigation, however, Plaintiff must do more than lodge conclusory allegations. He must come forward with evidence to support his claims. As to his failure to protect claim, Plaintiff has not presented any evidence that his injuries were occasioned by the complained of conditions and Defendants' deliberate indifference thereto.

The only evidence of the "racial tension" Plaintiff, a white man, can point to in support of his theory is his best guess of the black to white inmate ratio; that black inmates "on the bottom" of C-pod said "we don't want him down here;" and, hearsay from an unknown white inmate about "a discrepancy going on between blacks and whites." This falls far short of demonstrating the existence of the racial terrorism pled in the complaint. In fact, in deposition testimony, Plaintiff stated that, other than his own alteration, there were no fights in the facility while he was there. Further, there is no proof or testimony indicating that Plaintiff complained to jail officials about any vague or

---

[4] Plaintiff does not impute liability for the failure to protect against the Defendant City.

specific threat to his safety. Indeed, Plaintiff stated that, with the exception of his injuries, he was not subjected to any other instances of violence or threats of violence.

Plaintiff has failed to bring forth any supporting proof to show that the conditions were so perilous and fraught with racial discord that Defendants' knowledge of the risk should be inferred. *Johnson*, 385 F.3d at 524. Thus, it is highly dubious that prison officials possessed the requisite knowledge of a threat but were nonetheless deliberately indifferent to this purported risk of serious harm. *Raines v. Kaylo*, 275 F.3d 46 (5th Cir. 2001) . The racial divide that exists in all prisons, which is typically accompanied by aggression and territorialistic behavior, is an unfortunate reality. As demonstrated by the pervasiveness of prison gangs almost exclusively organized according to race, these types of conditions if left to flourish unabated can result in extremely violent riots and cyclical retaliatory attacks against individual inmates. The environment in the Lee County Jail, as described by Smith, does not resemble a racial powder keg. Instead, the conditions are more representative of the unfortunate but common racial division of a typical penal institution but, in any event, not on the verge of racial warfare.

Smith tries to bolster his failure to protect claim by alluding to the theory that overcrowded conditions, which Defendants knowingly tolerated, proximately caused his injury. Initially, this argument has some appeal. Reviewing Plaintiff's deposition testimony, however, reveals that the alleged overcrowding was not the cause of the altercation and his resulting injury. Plaintiff stated he left the holding cell and was moved to C-pod. Despite the purported unconstitutional overcrowding, which Plaintiff estimated there were "two or three" more inmates than beds, Plaintiff was assigned a bunk. On the day of his injury, Plaintiff explained that the inmate bunking below him was released leaving an empty bed. Plaintiff wanted the empty bunk and began moving his

8

belongings to the recently vacated spot. Apparently, a black inmate, who also had his eye on the same empty bed, claimed that it was his bunk. Plaintiff and this inmate had a verbal confrontation. When Plaintiff decided to abandon his intentions and return his personal belongings back to his original bunk, he was attacked by the inmate. While on the ground from the initial blow, Plaintiff contends that other black inmates joined the assault.

Therefore, construing the facts in a light most favorable to Plaintiff and consistent with his own explanation, the assault appears to have been an isolated incident not born out of racial animosity or overcrowding but the result of a dispute over who was going to take control of a recently vacated bunk. Plaintiff admits he was never threatened and that he never reported to any official that he felt threatened. As a result, Plaintiff has failed to prove (1) that Defendants knew of and disregarded (2) an excessive risk to his health or safety. *See Purvis v. Johnson*, 78 Fed. Appx. 377, 2003 WL 22391226 at **1-2 (5th Cir. 2003) (inmates allegations that he four times informed officials that his cell-mate was racist and threatening him everyday because he was white, and that he feared an attack sufficiently stated a claim for failure to protect); *but see Pogue v. Bello*, 275 F.3d 1079 (5th Cir. 2001) (summary judgment appropriate absent evidence of official's knowledge of risk and threats prior to attack). There being no genuine issue of disputed fact, summary judgment shall be entered in favor of Defendants as to the failure to protect claim.

    c. *Denial or Delay of Adequate Medical Treatment*

        i. Pain Medication

Plaintiff states that the Fourteenth Amendment guarantees his right to receive medical care for injuries incurred while in jail.[5] Plaintiff specifically alleges that Defendants did not provide him

---

[5] Plaintiff contends that his right is also secured to him by a state statute which reads:

> When any person confined in jail shall be in need of medical or

with pain medication ordered by the doctor upon his discharge from the hospital. Further, Plaintiff avers that he was denied medical treatment when he was released from jail on his own recognizance and Defendants failed to transfer him to the hospital for his surgery after his release.

As to the denial of medical care arising from the failure to provide Plaintiff with prescription pain medicine, Defendants allege that the doctor's order for pain medication was "as needed." Defendants insist and Plaintiff admits that he never requested any medication for pain after he returned to jail from the emergency room. *See* Pl. Depo. p.129:17-23 (July 27, 2006). Rather, for approximately 14 hours[6], Plaintiff seemed content with his assumption that Defendants were going to spontaneously bring him his medication. Respectfully, if Plaintiff's pain was unbearable surely he would have, on more than one occasion within the 14 hour period, made inquiry about the status of his prescription. Furthermore, Plaintiff received pain medication shortly before his discharge from the hospital. Plaintiff could have continued to enjoy the pain relieving benefits of the medication for several hours after returning to jail. Thus, the court refuses to impute knowledge of Plaintiff's need for pain medication to Defendants. Also pertinent, Plaintiff left the hospital around six o'clock

> surgical aid, the sheriff shall immediately examine the condition of such prisoner and, if he is of the opinion that the prisoner needs such aid, he shall call in a nurse or physician to attend him. If the prisoner be unable to pay the cost, the account of the nurse or physician, when allowed and certified as required in respect to accounts of sheriffs for keeping prisoners, shall be paid, in like manner, out of the treasury of the county in which a prisoner is charged with the crime for which he is imprisoned . . ."

Miss. Code. Ann. § 47-1-57(1). Contrary to Plaintiff's position however, a plain reading of the statute indicates that the medical treatment should be provided to "persons confined" or "prisoners." In fact, an attorney general opinion suggests that the government's duty to pay for medical expenses ends when the confined person is no longer in custody. Miss. Atty. Gen. Op. No. 2004-0444, Parker, (Sept. 17, 2004).

[6] Fourteen hours is based on Plaintiff's discharged from the hospital at approximately six o'clock in the evening and his release from jail at approximately eight-thirty the next morning.

in the evening–well after normal business hours. It is entirely possible that had Plaintiff remained in jail he would not have received the pain medication until the next working day. Instead, Plaintiff was released from jail the following morning and was free to obtain pain medication if he so desired. Since there was no clear denial or delay and Plaintiff never asked for pain medicine, it cannot be said that Defendants were deliberately indifferent towards Plaintiff's pain.

ii. Release from Jail

Plaintiff claims that his release from jail on the morning before his scheduled surgery was effectively a denial of medical care. Plaintiff frames his release as arbitrary, irrational, unconstitutional and designed only to avoid medical costs. For support, Plaintiff again calls the court's attention to state statutory law which directs law enforcement officials to transport a prisoner in need of hospitalization to the nearest hospital. *See* Miss. Code Ann. § 47-1-59(1). Importantly and different from this case, the statute addresses the hospitalization needs of *prisoners*. Thus, Plaintiff's reliance on the statute is misplaced.

Defendants argue and the court agrees that the government has no duty to prolong the custody of an inmate so medical care can be provided. The court has thoroughly researched the issue and has been unable to locate any authority that, if liberally construed, would place such a burden on the government. Plaintiff has similarly failed to offer any persuasive authority for this proposition.

The government's duty to provide medical treatment to incarcerated individuals exists because an inmate is unable to obtain treatment of his own volition. *See Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976). Therefore, if the government did not provide treatment a prisoner's need for medical attention would not be met. *DeShaney v. Winnebago County*

*Dept. of Social Serv.*, 489 U.S. 189, 200, 109 S.Ct. 998, 1006, 103 L.Ed.2d 249 (1989). The foundation of this duty is based upon the prisoner's inability to seek treatment because of his incarceration. Once the prisoner is released from custody, the rational no longer exists.

The record shows Plaintiff was released from custody at 8:34 a.m. and his surgery was scheduled for 10:00 a.m. He, therefore, had ample time to arrange transportation to the hospital [7]. Instead of calling a cab, walking or having relatives drive him to the hospital for his surgery, Plaintiff walked from the jail to his girlfriend's apartment. Plaintiff then had his girlfriend drive him, not to the hospital, but to locate a former girlfriend in Marietta, Mississippi, approximately 25 miles from the hospital and jail. Other than his release, there is no allegation that Defendants interfered with Plaintiff's ability to have his surgery on the morning of January 7, 2005. Indeed, Plaintiff seems to overlook that fact that his choices and his actions alone prevented the surgery from taking place as scheduled.

In order to succeed on his claim, Plaintiff would have to show that Defendants, by releasing him from custody, perceived a substantial risk of harm and actually intended that harm occur. In the court's opinion Plaintiff cannot meet the deliberate indifference standard. Defendants could not have possibly known that Plaintiff would fail to report for scheduled surgery when they released him from custody. Nor could have Defendants known that Plaintiff would delay the surgery for 6 days. As a result, Defendants could not and did not knowingly disregard a substantial risk of serious harm.

Although the circumstances of Plaintiff's release are less than palatable, it nevertheless does not rise to a constitutional violation. Plaintiff was a nonviolent offender, not considered a flight risk, who was perfectly aware of his scheduled surgery, but because of his own decisions failed to arrive

---

[7] The Lee County Jail is located not more than five miles from North Mississippi Medical Center.

at the hospital for treatment. While the Plaintiff's injury is unfortunate, he must bear the responsibility for the delayed medical attention and any consequences associated therewith. Accordingly, summary judgment shall be entered in favor of all Defendants as to the claim of inadequate medical treatment.

  2. Denial of Procedural Due Process

Lastly, Plaintiff argues that he was denied procedural due process when the Justice Court failed to explain the bail procedures to him. Particularly, Plaintiff complains that the judge failed to inform him of any procedure to make bail but points to Uniform Circuit and County Court Rule 6.02(c) which allows for a ten percent cash deposit. Further, the lack of information caused Plaintiff to remain in jail and suffer the injury. Plaintiff asks for injunctive and declaratory relief for this purported unconstitutional conduct.

Defendants counter that URCCC 6.02 does not apply to matters in justice court. But, even if Rule 6.02 was applicable, Plaintiff was not eligible to post the ten percent cash deposit in lieu of the full amount of bail. Additionally, Plaintiff lacks standing to obtain injunctive or declaratory relief.

First, accepting for a moment that there has been a constitutional violation, Plaintiff may not seek equitable relief unless he can show that he will suffer a repeated violation. As discussed *supra* in the "conditions of jail" analysis, the likelihood of Plaintiff appearing before the justice court again is too speculative to warrant injunctive or declaratory relief. Thus, Plaintiff's claim for the same is rendered moot.

Further discussion, however, may provide additional reassurance that Plaintiff's due process rights have not been violated. Plaintiff correctly states that pre-detainees, under certain

13

circumstances, do have a liberty interest in having bail set. *See* Miss. Const. Art. 4 § 29; *Jones v. State*, 798 So.2d 1241, 1255 (Miss. 2001); *Lee v. Lawson*, 375 So.2d 1019, 1021 (Miss. 1979). Plaintiff did have a reasonable bail announced by the justice court in the amount of $5,000. Therefore, the justice court met the constitutional requirements.

Next, Uniform Rule 6.02(c), upon which Plaintiff relies, provides in pertinent part,

> [P]ersons permitted to make bail may, in lieu of a 100% bond, make a cash bail bond provided the following requirements are met:
> 1. The accused must never have been convicted in any court of this state, another state or a federal court, of a crime punishable by more than one year's imprisonment, been charged with escape, or had an order *nisi* entered on a previous bond . . .

The record indicates that Plaintiff did not meet the requirements of 6.02(c) for posting a cash bail. In April 2004, the Municipal Court of the City of Baldwyn entered a judgment *nisi* against Plaintiff for failure to appear in court. Also, in May 2004, the Justice Court of DeSoto County issued a judgment *nisi* against Plaintiff again for his failure to appear. Accordingly, with two prior orders *nisi* under his belt, Plaintiff was not entitled to post a cash bail. Thus, the justice court's refusal to lecture Plaintiff about his ineligibility for the cash bond clearly did not trample upon any constitutional right. As a result, there is no issue of disputed fact and summary judgment shall be entered in favor of all Defendants.

*D. Conclusion*

In sum, Plaintiff has failed to demonstrate the existence of a disputed issue of material fact worthy of a jury's consideration. Consequently, summary judgment shall appropriately be granted in favor of all Defendants as to all claims.

A separate order in accordance with this opinion shall issue this day.

This the 19th day of July 2007.

/s/ Glen H. Davidson
Senior Judge